No. 22-10387

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

NATIONAL HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; ARIZONA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; ARKANSAS HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; INDIANA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; ILLINOIS HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; LOUISIANA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; MOUNTAINEER PARK HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; NEBRASKA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; OKLAHOMA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; OREGON HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; PENNSYLVANIA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; WASHINGTON HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION; TAMPA BAY HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION,

*Plaintiffs-Appellants*,

STATE OF TEXAS; TEXAS RACING COMMISSION,

*Intervenor Plaintiffs-Appellants,*

*v.*

JERRY BLACK; KATRINA ADAMS; LEONARD COLEMAN; MD NANCY COX; JOSEPH DUNFORD; FRANK KEATING; KENNETH SCHANZER; HORSERACING INTEGRITY AND SAFETY AUTHORITY, INCORPORATED; FEDERAL TRADE COMMISSION; COMMISSIONER KELLY SLAUGHTER; COMMISSIONER ROHIT CHOPRA; COMMISSIONER NOAH PHILLIPS; COMMISSIONER CHRISTINE WILSON,

*Defendants-Appellees*.

On Appeal from the United States District Court for the
Northern District of Texas, No. 5:21-cv-71

## EMERGENCY MOTION TO VACATE PANEL OPINION

John C. Roach
RANSDELL ROACH & ROYSE, PLLC
176 Pasadena Drive, Building One
Lexington, KY 40503
859-276-6262

Pratik A. Shah
Lide E. Paterno
AKIN GUMP STRAUSS
  HAUER & FELD LLP
2001 K Street N.W.
Washington, D.C. 20006
202-887-4000
pshah@akingump.com

*Counsel for Defendants-Appellees Jerry Black, Katrina Adams, Leonard Coleman, Nancy Cox, Joseph Dunford, Frank Keating, Kenneth Schanzer and Horseracing Integrity and Safety Authority, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

No. 22-10387, *National Horsemen's Benevolent and Protective Association v. Black*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants**
National Horsemen's Benevolent and Protective Association
Arizona Horsemen's Benevolent and Protective Association
Arkansas Horsemen's Benevolent and Protective Association
Indiana Horsemen's Benevolent and Protective Association
Illinois Horsemen's Benevolent and Protective Association
Louisiana Horsemen's Benevolent and Protective Association
Mountaineer Park Horsemen's Benevolent and Protective Association
Nebraska Horsemen's Benevolent and Protective Association
Oklahoma Horsemen's Benevolent and Protective Association
Oregon Horsemen's Benevolent and Protective Association
Pennsylvania Horsemen's Benevolent and Protective Association
Washington Horsemen's Benevolent and Protective Association
Tampa Bay Horsemen's Benevolent and Protective Association

**Counsel for Plaintiffs-Appellants**
Fernando M. Bustos
BUSTOS LAW FIRM, P.C.

Daniel R. Suhr
Reilly Stephens
Jeffrey D. Jennings
LIBERTY JUSTICE CENTER

**Intervenor Plaintiffs-Appellants**
State of Texas
Texas Racing Commission

i

**Counsel for Intervenor Plaintiffs-Appellants**

Taylor K. Gifford
Lanora C. Pettit
Cody T. Rutowski
Virginia S. Fields
OFFICE OF THE ATTORNEY GENERAL

**Authority Defendants-Appellees**

Jerry Black
Katrina Adams
Leonard Coleman
Nancy Cox
Joseph Dunford
Frank Keating
Kenneth Schanzer
Horseracing Integrity and Safety Authority, Inc.

**Counsel to Authority Defendants-Appellees**

Pratik A. Shah
Aileen M. McGrath
Lide E. Paterno
Brennan H. Meier
AKIN GUMP STRAUSS HAUER & FELD LLP

John C. Roach
David T. Royse
RANSDELL ROACH & ROYSE, PLLC

**Federal Defendants-Appellees**

Federal Trade Commission
Commissioner Kelly Slaughter
Commissioner Rohit Chopra
Commissioner Noah Phillips
Commissioner Christine Wilson

**Counsel to Federal Defendants-Appellees**

Alexander V. Sverdlov

Joseph F. Busa

Brian W. Stoltz

Mark B. Stern

U.S. DEPARTMENT OF JUSTICE

*s/Pratik A. Shah*

Pratik A. Shah

*Counsel for Defendants-Appellees
Jerry Black, Katrina Adams, Leonard
Coleman, Nancy Cox, Joseph Dunford,
Frank Keating, Kenneth Schanzer and
Horseracing Integrity and Safety
Authority, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND .............................................................................................3

ARGUMENT ..................................................................................................6

    I.    CONGRESS'S AMENDMENT ELIMINATES THE ALLEGED
          CONSTITUTIONAL DEFECT ...........................................................6

    II.   IMMEDIATE VACATUR OF THE PANEL OPINION IS
          WARRANTED ..................................................................................11

    III.  THE COURT SHOULD AFFIRM THE DISTRICT COURT'S
          JUDGMENT .....................................................................................15

CONCLUSION .............................................................................................17

## TABLE OF AUTHORITIES

<u>CASES</u>:

*Association of Am. R.R.s v. U.S. Dep't of Transp.*,
   721 F.3d 666 (D.C. Cir. 2013)................................................................8

*Boumediene v. Bush*,
   553 U.S. 723 (2008)................................................................1, 12

*Bryant v. Ford Motor Co.*,
   886 F.2d 1526 (9th Cir. 1989) ................................................16

*Comer v. Murphy Oil USA, Inc.*,
   718 F.3d 460 (5th Cir. 2013) ................................................11

*First Gibraltar Bank, FSB v. Morales*,
   42 F.3d 895 (5th Cir. 1995) ................................................11, 12, 16

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
   140 S. Ct. 768 (2020)................................................11

*King v. Finch*,
   428 F.2d 709 (5th Cir. 1970) ................................................1

*Louisiana v. Horseracing Integrity & Safety Authority, Inc.*,
   No. 22-30458, 2022 WL 17074823 (5th Cir. Nov. 18, 2022)................13

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ................................................1

*Securities & Exch. Comm'n v. Hallam*,
   42 F.4th 316 (5th Cir. 2022) ................................................11, 15, 16

*Sunshine Anthracite Coal Co. v. Adkins*,
   310 U.S. 381 (1940)................................................7, 10

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021) ................................................11
   142 S. Ct. 2528 (2022)................................................11

*U.S. Dep't of Just. v. Provenzano*,
   469 U.S. 14 (1984)................................................12

*United States v. Schooner Peggy*,
   5 U.S. (1 Cranch) 103 (1801) ............................................................................11

S<small>TATUTES</small>:

15 U.S.C.
   § 78s(b)(2)(C)(i)............................................................................................8
   § 78s(c)...............................................................................................6, 9, 10
   § 3053(b) ........................................................................................................3
   § 3053(c)(3) ...................................................................................................3
   § 3053(e) .....................................................................................................4, 6

Consolidated Appropriations Act, 2023, div. O, tit. VII, § 701 (2022)................2, 6

R<small>ULES</small>:

Fed. R. App. P.
   40(a)(1) ..........................................................................................................6
   41(b)................................................................................................................6

O<small>THER</small> A<small>UTHORITIES</small>:

FTC, Order Disapproving The Anti-Doping And Medication Control
   Rule Proposed By The Horseracing Integrity And Safety Authority
   (Dec. 12, 2022) .......................................................................................12, 13

Voss, Natalie, *Arizona Officials Don't Give A Damn About Protecting
   Claiming Horses*, P<small>AULICK</small> R<small>EPORT</small> (Dec. 15, 2022) ..................................14, 15

# INTRODUCTION

"It is emphatically the province and duty of the judicial department to say what the law is." *King v. Finch*, 428 F.2d 709, 713 (5th Cir. 1970) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). "At the same time, it is equally emphatically the province of the Congress to make and change the law." *Id.* This is the rare case where critical "dialogue between and among the branches of Government," *Boumediene v. Bush*, 553 U.S. 723, 738 (2008), has worked in real time both to advance Congress's pressing policy goals *and* to address the judiciary's asserted constitutional concerns.

Two years ago, Congress enacted (and President Trump signed into law) bipartisan legislation establishing a framework for uniform health-and-safety regulations to curb the tragic deaths, severe injuries, and diminished public trust that had threatened the national pastime of horseracing under the prior patchwork of State-based laws. Since their July 1 effectiveness date, the new regulations have brought much-needed safety reforms to the benefit of horses and horseracing participants and, in turn, have begun to restore integrity to the sport.

A few weeks ago, however, this Court held that the Horseracing Integrity and Safety Act ("HISA") violates the private-nondelegation doctrine. Under the original version of the Act that the Court considered, although the Federal Trade Commission reviewed all proposed standards for consistency with the Act in determining whether

1

or not to approve and promulgate them as binding federal rules, only the Horseracing Integrity and Safety Authority ("Authority") "writes the regulations and the FTC cannot modify them."  Slip. Op. 29.  Because (in the panel's view) the FTC lacked "the final word on the substance of the rules," the panel concluded that the Authority did not "function subordinately to the agency."  *Id*. at 29-30.

Congress heard this Court's concern and acted swiftly to resolve it.   On December 23 Congress again enacted, and on December 29 President Biden signed into law, bipartisan legislation—this time amending the operative language of HISA to fix the alleged constitutional defect the panel had identified.  The amendment confers on the FTC the precise rulemaking power from the parallel SEC-FINRA statute that this panel held "makes all the difference" to its private-nondelegation analysis.  Slip Op. 31.  There is no longer any dispute that the FTC in fact may "abrogate, add to, and modify" HISA rules as the FTC finds "necessary or appropriate."  Consolidated Appropriations Act, 2023, div. O, tit. VII, § 701 (2022) (Ex. A).

Accordingly, the panel opinion—predicated on a prior version of HISA that no longer exists and that Congress purposefully replaced—cannot stand.  Congress's direct response to the constitutional concern at the heart of the panel opinion— obviating the principal basis for Plaintiffs-Appellants' constitutional objection— strongly supports affirmance of the district court's judgment.  But regardless of how

and when the Court ultimately adjudicates this appeal, the panel should vacate its opinion and the judgment of the Court forthwith to prevent the serious harms that mount each day from the now-moot holding that the former version of the Act is facially unconstitutional.

## BACKGROUND

**1.** HISA draws on the expertise and experience of the Authority, a private standards-setting nonprofit organization, to supplant the web of inconsistent state-based horseracing laws with a new federal regulatory regime. "[M]odeled on the longstanding and long-upheld self-regulatory schemes found in the securities industry and elsewhere," ROA.1466, the Act vests in the FTC exclusive authority to promulgate (or not) rules based on racetrack-safety, medication-control, and anti-doping standards the Authority proposes, *see* 15 U.S.C. § 3053(b). Absent "notice and comment and independent FTC review and approval" of a proposed standard, and promulgation of the proposed standard as an enforceable regulation, the Authority's proposed standards have no legal effect. ROA.1504.

As originally enacted, HISA provided only two formal mechanisms for the FTC to modify rules under the Act. On the front end, the FTC could "'make recommendations' to the Authority to modify proposed rules," which the Authority could then incorporate in a resubmission for the FTC's approval. Slip Op. 7 (quoting 15 U.S.C. § 3053(c)(3)). On the back end, the FTC could modify a rule promulgated

3

under the Act by "adopt[ing] an 'interim final rule' under the APA's good cause standard, provided it finds this 'necessary to protect—(1) the health and safety of covered horses; or (2) the integrity of covered horseraces and wagering on those horseraces.'" *Id.* (quoting 15 U.S.C. § 3053(e), as originally enacted).

**2.**  Plaintiffs brought a facial challenge to HISA under the so-called private nondelegation doctrine, among other claims (most of which have since been abandoned), seeking declaratory and injunctive relief.  Central to Plaintiffs' complaint was their allegation that HISA provided for inadequate oversight of the Authority by the FTC because "the FTC may not draft rules to regulate horse racing, nor may it modify rules drafted by the Authority."  ROA.260 ¶ 83; *see also* ROA.263 ¶ 100 (alleging "[t]he limited oversight given to the FTC over the Authority is not sufficient to cure the constitutional violation" "[b]ecause the FTC may not draft rules on its own initiative" and "may only recommend modifications to Authority rules").  The State of Texas and the Texas Racing Commission intervened and pressed the same argument.  *See, e.g.*, ROA.1715 ¶ 120.

The district court issued a 60-page opinion dismissing Plaintiffs' claims with prejudice.  ROA.1466-1525.  The court agreed with Plaintiffs that HISA "restrict[ed] the FTC's stand-alone rulemaking power" and stripped the FTC of any "[]ability to formally modify the Authority's rules."  ROA.1508, 1515; *see* ROA.1508 ("As a result [of the 'good cause' requirement in section 3053(e)], the FTC's ability to issue

4

interim final rules is not much of an answer to the Horsemen's concern."). The district court nevertheless held that this limitation on the FTC's independent rulemaking power was "not fatal" under Supreme Court and Fifth Circuit precedent, because HISA otherwise "places the Authority subordinate to the FTC." ROA.1488, 1515 (formatting altered).

**3.** Plaintiffs and Texas appealed. They principally argued that the FTC could not exercise adequate oversight of the Authority "because [the FTC] cannot draft or modify" HISA rules. Plfs' Opening Br. 34 (formatting altered); *id.* at 39 ("[T]he power to modify is greater than and different from the power merely to approve or disapprove."); *see* Texas Opening Br. 18 ("Congress's delegation to the Authority exceeds the delegations the Supreme Court has previously approved" and is "even greater *** than the statute upon which HISA was allegedly modeled[,] the Maloney Act," "because the FTC lacks the power to independently modify rules," "'abrogate' rules," "or add such rules as it deems necessary.").

This Court agreed and held HISA facially unconstitutional. In the panel opinion issued on November 18, the Court found that only "the Authority writes the regulations and the FTC cannot modify them," and thus the Authority does not "function subordinately to the agency." Slip Op. 29. The SEC's power under the Maloney Act "to 'abrogate, add to, and delete from' FINRA rules," the Court explained, "meaningfully distinguishes the SEC-FINRA relationship from the FTC-

5

Authority relationship" under HISA. *Id.* at 30. Because this case turns on "whether the private entity is subordinate to the agency for rulemaking purposes, that distinction makes all the difference." *Id.* at 31.

Under Federal Rules of Appellate Procedure 40(a)(1) and 41(b), the mandate has not yet issued.

**4.** On December 23, 2022, Congress passed and the President signed into law an amendment to HISA to eliminate the alleged constitutional defect identified in the panel opinion. Consolidated Appropriations Act, 2023, div. O, tit. VII, § 701 (2022) (Ex. A). The new statute amends section 1204(e), 15 U.S.C. § 3053(e), to provide the FTC with independent rulemaking authority:

> The Commission, by rule in accordance with section 553 of title 5, United States Code, may abrogate, add to, and modify the rules of the Authority promulgated in accordance with this Act as the Commission finds necessary or appropriate to ensure the fair administration of the Authority, to conform the rules of the Authority to requirements of this Act and applicable rules approved by the Commission, or otherwise in furtherance of the purposes of this Act.

Ex. A at 2-3. That language is drawn directly from the parallel provision of the SEC-FINRA statute. *See* 15 U.S.C. § 78s(c).

## ARGUMENT

## I.   CONGRESS'S AMENDMENT ELIMINATES THE ALLEGED CONSTITUTIONAL DEFECT

The legislative change to HISA's operative language resolves the alleged constitutional defect identified in the panel's November 18 opinion.

6

**1.** The panel held HISA facially unconstitutional based on the "principle that a private entity may wield government power only if it 'functions subordinately' to an agency with 'authority and surveillance' over it." Slip Op. 19 (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940)). Plaintiffs had argued that the Authority does not function subordinately to the FTC "because [the FTC] cannot draft or modify" HISA rules. Plfs' Opening Br. 34 (formatting altered); *see, e.g.*, ROA.263 ¶ 100 (First Am. Compl.) (alleging "[t]he limited oversight given to the FTC over the Authority is not sufficient to cure the constitutional violation" "[b]ecause the FTC may not draft rules on its own initiative" and "may only recommend modifications to Authority rules"); ROA.1715 ¶ 120 (Texas's First Am. Compl.) (same). The district court found that "the FTC lacked any power 'to formally modify the Authority's rules,'" but held "this was 'not fatal' to the Act's constitutionality, because relevant precedents did not turn on the agency's power to modify the private entity's rules, only on its power to 'approve or disapprove' them." Fifth Cir. Slip Op. 13 (quoting ROA.1515).

**2.** The panel expressly "disagree[d]" with the district court. Slip Op. 29. The district court was "mistaken," the panel explained, that "*Adkins* 'did not rely' on the fact that the agency could modify the prices proposed by private parties." *Id.* at 29; *id.* at 19 (embracing D.C. Circuit's interpretation of *Adkins* that "Congress may formalize the role of private parties in proposing regulations so long as that role is

merely 'as an aid' to a government agency that retains the discretion to 'approve[],
disapprove[], *or modif[y]*' them" (alterations in original) (emphasis added) (quoting
*Association of Am. R.R.s v. U.S. Dep't of Transp.*, 721 F.3d 666, 671 (D.C. Cir.
2013)). The panel determined that "the FTC's power to *recommend* modifications
is not equivalent to the power to *require* modifications." *Id.* at 31. And the panel
found that because "the FTC's interim rulemaking power is subject to the APA good
cause standard," that limitation on the FTC's modification power prevented the
agency from being "superior to the Authority." *Id.* at 23. Under the former version
of HISA, pursuant to which only "the Authority writes the regulations and the FTC
cannot modify them," the panel held that "the FTC's limited review of proposed
rules does not make the Authority function subordinately to the agency." *Id.* at 29.

The panel's discussion of the Maloney Act, "which created the SEC-FINRA
model and after which Congress modeled HISA," Slip. Op. 30, dispels any doubt
that the panel's private-nondelegation holding rests on the FTC's (previous) inability
to modify HISA rules directly. "Like the Authority, FINRA is a private entity
empowered to draft and propose regulations to the SEC," which "engages in [the]
same 'consistency' review as the FTC." *Id.* at 30-31 & n.35; *see* 15 U.S.C.
§ 78s(b)(2)(C)(i) ("The Commission shall approve a proposed rule change of a self-
regulatory organization if it finds that such proposed rule change is consistent with
the requirements of this chapter and the rules and regulations issued under this

8

chapter that are applicable to such organization."). But this common feature was "irrelevant," according to the panel, because of a "key distinction" between the two statutory frameworks: "Unlike [the prior version of] HISA, the Maloney Act empowers the SEC to 'abrogate, add to, and delete from' FINRA rules 'as the [SEC] deems necessary or appropriate[.]'" Slip Op. 30-31 & n.35 (second and third alterations in original) (quoting 15 U.S.C. § 78s(c)). "[T]he SEC's power to abrogate the private organization's rules" provides "a clear hierarchy" between the SEC and FINRA that the panel held did not exist between the FTC and the Authority under the former version of HISA. *Id.* at 32.

The panel rejected the "argument that the FTC's 'revise-and-resubmit power,' *i.e.*, the FTC's power to deny a proposal and suggest modification, puts the FTC here on similar footing to the SEC" since "[t]he SEC itself can make changes to FINRA rules." Slip Op. 31. The panel further found that the FTC's interim rulemaking power under the former version of HISA did not "mirror[] the SEC's ability to 'abrogate, add to, and delete from' FINRA rules" because "the SEC's power to change FINRA rules is not limited to emergency situations or situations meeting the 'good cause' standard." *Id.* at 23 n.27. Because the dispositive question under the panel's private-nondelegation analysis was "whether the private entity is subordinate to the agency for rulemaking purposes," the panel concluded that the FTC's inability

9

to "make changes" to HISA rules was a distinction with the SEC-FINRA statute that "makes all the difference." *Id.* at 31.

**3.**     Congress heard the panel's concern and acted to remedy the alleged constitutional defect the panel had identified.  The amendment to section 3053(e) mirrors the operative language from the provision of the Maloney Act that the panel held had "meaningfully distinguishe[d] the SEC-FINRA relationship from the FTC-Authority relationship" under the prior version of HISA.  Slip Op. 30 (discussing 15 U.S.C. § 78s(c)).  The FTC now has the express power, like the SEC under the Maloney Act, to "abrogate, add to, and modify" rules under HISA "as the [FTC] finds necessary or appropriate." Ex. A at 3.  In other words, the superseding statutory amendment formally provides to the FTC the independent "rulemaking power" that the panel determined Congress had previously "withheld."  Slip Op. 30.

The panel pointed to this modification power to explain that, "although FINRA plays an important role in formulating securities industry rules, its role is ultimately 'in aid of' the SEC, which has the final word on the substance of the rules."  Slip Op. 31 (quoting *Adkins*, 310 U.S. at 388).  The same conclusion necessarily follows under HISA now that Congress has erased the "key distinction" between the former version of the Act and the SEC-FINRA statute.  *Id.* at 30.  Because the FTC now indisputably has "the last word over what rules govern our

nation's thoroughbred horseracing industry," the Authority is now indisputably "subordinate to the agency." *Id.* at 4, 31.

## II.    IMMEDIATE VACATUR OF THE PANEL OPINION IS WARRANTED

**1.**    "This court retains control over an appeal until [it] issue[s] a mandate." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (citation omitted). When, "before [the Court's] mandate issue[s], Congress amend[s] the relevant statute to make clear that it couldn't be the basis for [the Court's holding]," the Court has an "obligation to review the judgment" and apply "'the law as it currently exists.'" *Securities & Exch. Comm'n v. Hallam*, 42 F.4th 316, 337 n.86 (5th Cir. 2022) (quoting *First Gibraltar Bank, FSB v. Morales*, 42 F.3d 895, 898 (5th Cir. 1995)); *see Texas v. Biden*, 20 F.4th 928, 957 n.6 (5th Cir. 2021) (noting "venerable principle that, 'if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied'" (quoting *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801)), *vacated on other grounds*, 142 S. Ct. 2528 (2022).

As explained, Congress has now amended HISA to resolve the alleged constitutional concern the panel had identified by conferring on the FTC the exact independent rulemaking authority that the panel had found absent.  And "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Hallam*, 42 F.4th 316, 337 (quoting *Intel Corp. Inv. Pol'y*

11

*Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020)).  Indeed, "if th[e] ongoing dialogue between and among the branches of Government is to be respected, [the Court] cannot ignore that [this amendment] was a direct response to [the panel's] holding." *Boumediene*, 553 U.S. at 738.  The Court "must necessarily include the effects of the Amendment in [its] consideration." *First Gibraltar*, 42 F.3d at 898.

Accordingly, the panel opinion—predicated on a former version of the Act that no longer exists—cannot stand.  *See First Gibraltar*, 42 F.3d at 896-898 (vacating panel opinion in light of intervening statutory amendment enacted prior to issuance of mandate even though "[a]n 'actual controversy,' capable of being resolved by a declaratory judgment, [wa]s still ongoing"); *accord U.S. Dep't of Just. v. Provenzano*, 469 U.S. 14, 15 (1984) (ordering vacatur of appellate judgment where "new legislation" effects "mootness of the particular issue that was presented," even if "the cases themselves *** remain alive").

**2.**  The Court should provide such relief forthwith pending further disposition of this appeal.  At least three sets of ongoing harms posed by the panel opinion warrant its immediate vacatur.

*First*, as explained in a December 12, 2022 order, the FTC has determined that it will not approve the anti-doping and medication control rules while the panel opinion is on the books.  *See* FTC, Order Disapproving The Anti-Doping And Medication Control Rule Proposed By The Horseracing Integrity And Safety

12

Authority (Dec. 12, 2022).[1]  The FTC disapproved (without prejudice) the proposed anti-doping and medication control rules "because the Horseracing Integrity and Safety Act has been held unconstitutional by a panel of the United States Court of Appeals for the Fifth Circuit." *Id.* at 2.  According to the agency, the prospect that the new program might be unenforceable in certain parts of the country in light of the panel opinion would undermine the Act's "bedrock principle" of the "need for uniformity" and cause "confusion *** for industry participants and regulators." *Id.* at 1-2.  If the panel opinion is not vacated by January 13, it could jeopardize the FTC's reconsideration of—and determination whether to approve, disapprove, or modify—the proposed rules in time for the critical regulatory program that Congress mandated two years ago, and reinforced in its amendment last month, to take effect before the heart of the racing season in most jurisdictions.

*Second*, the panel opinion creates other substantial hurdles to the implementation of HISA because this Court relied on it in a different case to reinstate a preliminary injunction—an injunction premised largely on specious APA notice-and-comment grounds yet to be adjudicated on appeal.  In *Louisiana v. Horseracing Integrity and Safety Authority, Inc.*, this Court lifted the partial stay of the district court's order enjoining *all* HISA regulations in Louisiana and West Virginia (and

---

[1]    https://www.ftc.gov/system/files/ftc_gov/pdf/order_re_hisa_anti-doping_disapprove_without_prejudice_0.pdf.

with respect to the individual named plaintiffs wherever they race) based solely on the ruling in this "separate case" that "HISA is facially unconstitutional." No. 22-30458, 2022 WL 17074823, at *1 (5th Cir. Nov. 18, 2022). That follow-on decision, without any appellate adjudication of the Louisiana district court's (manifestly flawed) non-constitutional rationale for the preliminary injunction, has already caused precisely the sort of dis-uniformity that Congress sought to eliminate.[2]

*Third*, the panel opinion continues to provide a fig leaf for some industry participants to disregard the operative rules despite no court injunction at all. For example, the Racing Division of the Arizona Department of Gaming has reportedly announced that "claims cannot and will not be voided" in that State. Natalie Voss, *Arizona Officials Don't Give A Damn About Protecting Claiming Horses*, PAULICK

---

[2] To make matters worse, the plaintiffs in the Louisiana case seek to expand the injunction to cover new parties "coast-to-coast." Expedited Mot. for Issuance of the Mandate Forthwith at 4, *Louisiana v. Horseracing Integrity and Safety Authority, Inc.*, No. 22-30458 (5th Cir. Dec. 15, 2022). Although this Court denied the challengers' motion to expedite issuance of the mandate in that appeal, those challengers have indicated that on remand they (and "additional parties") intend "to seek additional relief in the district court" "based on this Court's ruling 'that HISA is facially unconstitutional under the private non-delegation doctrine'"—even though they expressly disclaimed any such constitutional challenge in that case. *Id.* at 3-5; *see also id.* Ex. A at 8 (noting plans to file "motion to expand the preliminary injunction"). Immediate vacatur of the panel opinion here would permit reinstatement of the stay pending appeal and mitigate the threat of further nationwide disruption of HISA rules in the Louisiana case, pending this Court's further adjudication of both appeals.

REPORT (Dec. 15, 2022) (formatting altered).[3]  That position completely thwarts the Void Claim Rule promulgated under HISA, which "voids the claim of a horse who dies or is euthanized on track, is vanned off, is determined within one hour of the race to be lame or to have bled, or has a positive test for a prohibited substance." *Id.* Beyond the operational headaches for the Authority, there are real consequences to ignoring this rule, including risk to the "safety for jockeys" and "the incentive for bad actors to drop horses they know are lame into cheap races where an unsuspecting colleague may claim them." *Id.*  Yet with every day that the panel opinion remains on the books, the faction of the horseracing industry that has long opposed this much-needed regulatory reform is further emboldened to trample federal law.

## III.   THE COURT SHOULD AFFIRM THE DISTRICT COURT'S JUDGMENT

In any subsequent opinion after immediate vacatur of the panel's November 18 opinion, the Court should affirm the district court's judgment.

Although the Court "often emphasize[s] the 'general rule *** that [it is] a court of review, not of first view,'" it "need not remand where the district court's judgment, issued before the congressional action, turns out to be vindicated." *Hallam*, 42 F.4th at 337 (ellipsis in original) (citation omitted).  Indeed, this Court and others have "affirmed the original judgment" of a district court "based on an

---

[3]  paulickreport.com/news/ray-s-paddock/voss-arizona-officials-dont-give-a-damn-about-protecting-claiming-horses/.

amendment that didn't exist when the district court reached its decision," even after the Court had "first reversed" the district court's judgment. *Id.* at 337 n.86 (discussing *First Gibraltar,* 42 F.3d at 902); *see also, e.g.*, *Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989) (vacating prior judgment of appellate court and affirming district court's judgment).

Here, the legislative amendment buttresses and vindicates the district court's conclusion that the Authority operates subordinately to the FTC, even though the panel had disagreed with that conclusion based on the prior (now-superseded) version of HISA. In this forward-looking, facial constitutional challenge, the Court is "well-positioned to consider" the "purely legal" question of how the modification power newly afforded to the agency affects the FTC-Authority relationship under the amended Act. *Hallam*, 42 F.4th at 338. In fact, the panel has already done that work by explaining that this "key distinction" between the Maloney Act and the prior version of HISA—rendered obsolete by Congress's new law—made "all the difference" in confirming that "the private entity [FINRA] is subordinate to the agency [SEC] for rulemaking purposes." Slip Op. 30-31. Congress's amendment also reinforces the district court's rejection of Plaintiffs' other subsidiary arguments, as the FTC now has ultimate authority to "abrogate, add to, and modify" any rules governing the Authority's (non-legislative) investigative or enforcement activities,

and any resulting sanctions are still subject to the FTC's plenary administrative review.  This Court should affirm.

## CONCLUSION

The Court should vacate the panel opinion and the judgment of the Court as soon as possible, but no later than January 13, 2023, pending further disposition of this appeal and affirmance of the district court's judgment.

January 3, 2023

John C. Roach
RANSDELL ROACH & ROYSE, PLLC
176 Pasadena Drive, Building One
Lexington, KY 40503
859-276-6262

Respectfully submitted,

*s/Pratik A. Shah*
Pratik A. Shah
Lide E. Paterno
AKIN GUMP STRAUSS
   HAUER & FELD LLP
2001 K Street N.W.
Washington, D.C. 20006
202-887-4000
pshah@akingump.com

*Counsel for Defendants-Appellees*
*Jerry Black, Katrina Adams, Leonard*
*Coleman, Nancy Cox, Joseph Dunford,*
*Frank Keating, Kenneth Schanzer and*
*Horseracing Integrity and Safety*
*Authority, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2023, I electronically filed the foregoing

with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit

using the appellate CM/ECF system.  Counsel for all parties to the case are registered

CM/ECF users and will be served by the CM/ECF system.


*s/Pratik A. Shah*
Pratik A. Shah

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fifth Circuit Rule 27.3, I hereby certify that the facts supporting emergency consideration of the motion are true and complete.

Pursuant to Fifth Circuit Rule 27.4, I hereby certify that the movants have contacted all other parties. The FTC Defendants-Appellees support the requested relief and plan to file a separate petition for panel rehearing. Plaintiffs-Appellants and Texas each intend to file an opposition to the motion, and Plaintiffs-Appellants "oppose any modification to shorten the timeline set in FRAP 27(a)(3)(A)."

Pursuant to Rule 27(d)(2)(a) of the Federal Rules of Appellate Procedure, I hereby certify that the textual portion of the foregoing motion (exclusive of the certificate of interested persons, tables of contents and authorities, and certificates of service and compliance, but including footnotes) contains 3,916 words as determined by the word counting feature of Microsoft Word 2016.

I hereby certify that this motion complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this motion has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, and with 14-point font in the footnotes.

*s/Pratik A. Shah*

Pratik A. Shah

January 3, 2023